ALLEN BOBBITT and ROBERT
BUTLER, individually and on behalf
of those similarly situated,

       Plaintiffs,

v.                                    Case No.  8:11-cv-2855-T-24 MAP

BROADBAND INTERACTIVE, INC.,

       Defendant.

_____/

## ORDER

This cause comes before the Court on Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice.  (Doc. No. 11).  Defendant opposes the motion.  (Doc. No. 28).  As explained below, the motion is granted in part.

## I.  Background

On December 28, 2011, Plaintiffs Allen Bobbitt and Robert Butler filed suit against Defendant Broadband International, Inc. ("BBI").  In their amended complaint, Plaintiffs allege the following (Doc. No. 5): Bobbitt and Butler worked for BBI as Collections/Disconnect Technicians ("C/D Techs").  As C/D Techs, Plaintiffs would travel to customers of cable providers that contracted with BBI, and Plaintiffs would disconnect cable services, collect money owed, and retrieve cable equipment.

Plaintiffs contend that BBI mis-classified them (and all other Florida C/D Techs) as independent contractors, as opposed to employees, until January of 2011.  After January of 2011, BBI reclassified them (and all other Florida C/D Techs) as non-exempt employees, and they continued to perform the same duties as they did prior to the reclassification.

Plaintiffs contend that BBI violated Article X, Section 24 of the Florida Constitution by failing to pay them (and all other Florida C/D Techs) minimum wages prior to their reclassification as employees of BBI in January of 2011. Additionally, Plaintiffs contend that BBI violated the Fair Labor Standards Act ("FLSA") by failing to pay them (and all other Florida C/D Techs) minimum wages and overtime prior to their reclassification as employees of BBI. Plaintiffs bring the FLSA claims on behalf of themselves and as a collective action on behalf of all C/D Techs that did work for BBI in Florida.[1]

Additionally, Plaintiffs contend that after BBI reclassified them as employees, BBI continued to violate the FLSA by failing to pay them minimum wages and overtime. Additionally, Plaintiffs contend that after BBI reclassified them as employees, BBI violated Article X, Section 24 of the Florida Constitution by failing to pay them minimum wages. Plaintiffs bring these post-reclassification claims on behalf of themselves only.

## II.  Motion for Conditional Certification and Court-Authorized Notice

Pursuant to 29 U.S.C. § 216(b), Plaintiffs move the Court to conditionally certify a putative class of C/D Techs that performed work for BBI in Florida from July 29, 2008 through January 1, 2011, so they can pursue the FLSA claims via a collection action. Additionally, Plaintiffs are requesting that the Court authorize Plaintiffs to mail notice of this lawsuit and a consent to join form to the proposed class members. BBI opposes this motion on several grounds, arguing that: (1) the fact-intensive issue of whether the C/D Techs were independent contractors or employees during the relevant time frame precludes conditional certification; (2)

---

[1]Currently, seven other C/D Techs have filed consents to join in this action: (1) Andrew Briller, (2) Johnny Ray Owsley, (3) Vincent Sharkey, (4) Allen Smith, (5) Clifford Szabo, (6) Scott Kiddy, and (7) Matthew Ortiz.  (Doc. No. 2, 4, 6, 7, 8).

Plaintiffs have not shown that there are other C/D Techs that are interested in joining this lawsuit; (3) Plaintiffs have not shown that the putative class of Florida C/D Techs are similarly situated; (4) Plaintiffs' proposed collective class is over-broad; (5) Plaintiffs have improperly calculated the proposed relevant time frame; and (6) Plaintiffs' proposed notice must be modified.  Accordingly, the Court will address each argument.

### A.  Framework for Analyzing Motions for Conditional Certification and Notice

Pursuant to 29 U.S.C. § 216(b), an action to recover for violations of the FLSA may be brought by one or more employees on their own behalf and on behalf of other similarly situated employees.  If an employee-plaintiff wants to maintain an opt-in collective action against his employer for FLSA violations, the plaintiff must demonstrate that he is similarly situated to the proposed members of the collective class and that there is a desire by them to join the lawsuit.  See Hipp v. Liberty National Life Insurance Company, See 252 F.3d 1208, 1217 (11th Cir. 2001); Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  An employee interested in joining, or opting-in to, the lawsuit must file a written consent in order to become a party to the suit.  See 29 U.S.C. § 216(b).

The Eleventh Circuit has suggested a two-tiered approach for district courts to use when determining whether an opt-in class should be certified:

> The first determination is made at the so-called "notice stage."  At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.  If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."  The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant[,] usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[2]

### B.  Conditional Certification When Employee/Independent Contractor Issue Exists

BBI argues that conditional certification is not appropriate because it is challenging whether the C/D Techs were employees, as opposed to independent contractors, prior to January of 2011. As a result of the dispute regarding the nature of the relationship between BBI and the C/D Techs, the Court will have to apply the economic realities test in order to determine whether the C/D Techs were BBI employees, because only employees can assert FLSA claims. BBI argues that because the economic realities test is a fact-intensive inquiry that must be undertaken for each putative class member, conditional certification is not warranted. The Court rejects this argument.

BBI is correct that in determining whether a person is an independent contractor or an employee, courts apply the economic realities test in order to evaluate the alleged employee's economic dependence on the alleged employer. See Freund v. Hi-Tech Satellite, Inc., 185 Fed. Appx. 782, 782-83 (11th Cir. 2006). In applying the economic realities test, courts consider the

---

[2]Mooney was overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

following factors, none of which are dispositive: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business." Id. at 783 (citation omitted). However, the fact that the Court must undertake this factual inquiry as to each person that opts-in to this action does not preclude conditional certification. If the C/D Techs are truly similarly situated, then the evaluation of these factors as to each person that opts-in will likely be substantially similar.

The Court acknowledges that BBI has cited to case law in which courts have concluded that conditional certification of the plaintiffs' FLSA claims was not warranted because the alleged employer disputed that the plaintiffs were employees, as opposed to independent contractors. However, this Court is persuaded by the cases cited by Plaintiffs in which the courts granted conditional certification even though the defendant disputed that an employment relationship existed. See Carrera v. UPS Supply Chain Solutions, Inc., 2011 WL 1303151, at *6 (S.D. Fla. Mar. 31, 2011); Clincy v. Galardi South Enterprises, Inc., 2010 WL 966639, at *1, 3 (N.D. Ga. Mar. 12, 2010); Kerce v. West Telemarketing Corp., 575 F. Supp.2d 1354, 1365 (S.D. Ga. 2008); Gutescu v. Carey International, Inc., 2003 WL 25586749, at *2, 15 (S.D. Fla. 2003). Accordingly, this Court concludes that the fact that BBI disputes that an employment relationship exists with the C/D Techs is not a sufficient basis to deny conditional certification at this stage of the proceedings.

## C.  Interest in Joining This Lawsuit By Other C/D Techs

In evaluating whether conditional certification is appropriate, this Court considers whether Plaintiffs have shown that other Florida C/D Techs are interested in joining this lawsuit. According to BBI, it estimates that there were approximately 140 Florida C/D Techs in 2009 and 2010.  Plaintiffs point out that seven Florida C/D Techs have already filed written notice of their consent to join this lawsuit.  Furthermore, Plaintiffs and several opt-in plaintiffs have stated in their declarations that they believe that other Florida C/D Techs would be interested in joining this lawsuit.  (Doc. No. 10).

BBI argues that the Court should not consider two of the opt-in plaintiffs' interest in joining this lawsuit, because they did not perform work for BBI during the relevant limitations period.  Specifically, BBI argues that Matthew Ortiz, who filed his notice of consent to join this lawsuit on March 30, 2012, did not work for BBI during the relevant three-year period prior to the filing of his notice of consent to join.  (Doc. No. 8-1; Doc.  No. 28-1, ¶ 3).  Plaintiffs did not submit a declaration from Ortiz that refutes BBI's argument, and as such, the Court will not consider Ortiz's interest in joining this lawsuit.

Additionally, BBI argues that Johnny Owsley, who filed his notice of consent to join this lawsuit on January 3, 2012, did not work for BBI during the relevant three-year period prior to the filing of his notice of consent to join.  (Doc. No. 2-3; Doc.  No. 28-1, ¶ 3).  Plaintiffs, however, submitted a declaration from Owsley that refutes BBI's argument; Owsley states that he performed work for BBI from August 2008 through February of 2009.  (Doc. No. 10-7, ¶ 2). Given the preliminary stage of these proceedings and Owsley's declaration, the Court will consider Owsley's interest in joining this lawsuit.

Accordingly, the Court concludes that Plaintiffs have shown actual interest by six of the C/D Techs that filed notices of their consent to join in this lawsuit. In response to such evidence, BBI filed the declarations of seventeen other C/D Techs, in which the C/D Techs state that they do not wish to join in this lawsuit. (Doc. No. 28, Ex. 2 - 18). BBI argues that these declarations show that there is not sufficient interest in joining this lawsuit by other C/D Techs. The Court, however, is not persuaded by this argument. To begin with, the declarations of the C/D Techs submitted by BBI only state the date that each one **began** performing work for BBI; they do not state the duration of time they performed work for BBI. As such, it is unclear whether some or all of these C/D Techs performed work for BBI during the relevant limitations period. Furthermore, even assuming that these C/D Techs performed work for BBI during the relevant period, the Court is not persuaded that their declarations of no interest in joining this lawsuit are sufficient to overcome the interest shown by the other opt-in plaintiffs. Accordingly, the Court finds that Plaintiffs have shown sufficient interest by other C/D Techs in joining this lawsuit. See Joseph v. Family Preservation Services of Florida, Inc., 2011 WL 1790167, at *4 (S.D. Fla. May 10, 2011)(citations omitted).

### D. Similarly Situated Requirement

In evaluating whether conditional certification is appropriate, this Court considers whether Plaintiffs have shown that the purported class members (i.e., other Florida C/D Techs) are similarly situated to Plaintiffs with respect to their job requirements and with regard to their pay provisions. See Dybach, 942 F.2d at 1567-68. In determining whether Plaintiffs and the purported class members are similarly situated with respect to their job requirements, Plaintiffs only need to show that their positions are similar; Plaintiffs are not required to show that their

positions are identical.  See Grayson v. K Mart Corp.. 79 F.3d 1086, 1096 (11th Cir.

1996)(citations omitted).  Furthermore, the similarly situated requirement "is more elastic and

less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)."  Id. at

1095.

In support of their argument that all Florida C/D Techs are similarly situated to Plaintiffs,

Plaintiffs have filed their own declarations, as well as declarations from fourteen other C/D

Techs that outline the work they performed for BBI.  (Doc. No. 10).  A review of these

declarations shows that these C/D Techs performed work for BBI that was similar to the work

performed for BBI by Plaintiffs.

Additionally, a review of these declarations also shows that the C/D Techs were similarly

situated with Plaintiffs with regard to their pay provisions.  Specifically, both Plaintiffs and the

C/D Techs state that they typically worked ten to twelve hours a day, at least five days per week,

and they were not paid overtime prior to 2011.  (Doc. No. 10).  Additionally, they state that they

were paid on a piece-rate basis based on the type of service they were to perform and that they

were not paid for unsuccessful stops at a customer's house.  (Doc. No. 10).

BBI objects to the Court's consideration of many of these declarations, because nine of

the declarations are from C/D Techs that pursued claims against BBI in prior related lawsuits.

Thus, BBI argues that because those C/D Techs have settled their claims against BBI in the

related lawsuits, their declarations should not be considered.

When assessing whether there was sufficient interest in joining this lawsuit by other C/D

Techs, the Court did not consider the nine declarations from the C/D Techs that settled their

claims against BBI in the prior lawsuits, because those C/D Techs cannot join this lawsuit.[3] However, the declarations from those C/D Techs that settled describe the work that they performed for BBI and how they were paid, and as such, those declarations are still relevant to the issue of whether BBI's Florida C/D Techs, in general, are similarly situated to Plaintiffs. Accordingly, the Court has considered the declarations from the nine C/D Techs that settled their claims against BBI when evaluating the similarly situated requirement.

Based on the Court's review of the C/D Techs' declarations, the Court concludes, at this early stage of the proceedings, that Plaintiffs have made a sufficient showing that the Florida C/D Techs are similarly situated to Plaintiffs. Because the Court has already concluded that Plaintiffs have shown sufficient interest in joining this lawsuit by other Florida C/D Techs, the Court concludes that conditional certification should be granted and that Court-authorized notice is warranted.

### E.  Breadth of the Proposed Collective Class

Plaintiffs contend that the class should consist of C/D Techs that performed work for BBI in Florida. BBI objects to the geographic scope of the proposed class and argues that the class should be limited to the C/D Techs that worked in Hillsborough county, because that is where the largest number of C/D Techs worked, and C/D Techs in one county or service area are not similarly situated to C/D Techs in other counties or service areas. Alternatively, BBI argues that the class should be limited to the counties where Plaintiffs and the opt-in plaintiffs worked— Hillsborough, Pinellas, and Polk counties—because those are the only counties from which

---

[3]The nine declarations made by people that settled their claims against BBI in a prior lawsuit were made by: Eric Contessa, Chris Howe, David Ortiz, Joseph Palmer, Paul Smith, John Story, Matthew Thomas, Michael Vera, and John Young.

Plaintiffs have demonstrated that actual interest in joining this lawsuit by C/D Techs exists.[4]  The

Court is not persuaded by these arguments.

## 1.  Limiting the Class to Hillsborough County

BBI argues that C/D Techs in one county or service area are not similarly situated to C/D

Techs in other counties or service areas, and therefore, because the largest number of C/D Techs

worked in Hillsborough county, the class should be limited to Hillsborough C/D Techs.  The

Court rejects this argument.

The fact that the largest number of C/D Techs worked in Hillsborough county does not,

in itself, warrant limiting the class to Hillsborough C/D Techs.  Furthermore, as explained below,

the Court is not persuaded by BBI's argument that C/D Techs in one county or service area are

not similarly situated to C/D Techs in other counties or service areas within Florida.

In support of its argument that C/D Techs in one county or service area are not similarly

situated to C/D Techs in other counties or service areas, BBI asserts that: (1) C/D Techs

regularly performed services in only one county or service area; (2) a BBI employee acted as the

point of contact for the C/D Techs in each county or service area, and each county or service

area had a different BBI employee as the point of contact; (3) BBI serviced a distinct Bright

House cable company operating unit in each county or service area, and each Bright House

operating unit had some different procedures and technical requirements that applied to BBI and

its C/D Techs; and (4) BBI paid its C/D Techs different rates in different counties for the

services they performed.  (Doc. No. 28-1).  While BBI's assertions show that the C/D Techs

---

[4]The other counties in which C/D Techs performed work for BBI are Citrus, Hernando,
Pasco, and Manatee.

reported to different BBI point people and did work for different Bright House operating units, the assertions do not really clarify how the work performed by the C/D Techs was dis-similar or that the payment policies (as opposed to the rates of pay) differed.

Instead, the Court concludes that Plaintiffs have made a preliminary showing through the sixteen declarations that Plaintiffs filed that C/D Techs in Pasco, Polk, Pinellas, Hernando, Citrus, and Hillsborough counties were similarly situated with respect to their job requirements and with regard to their pay provisions. For example, Plaintiffs submitted the declaration of Christian Howe, who performed worked as a C/D Tech for BBI in Hillsborough, Pasco, Hernando, and Citrus counties. (Doc. No. 10-5). In his declaration, Howe states that the work that he performed and the manner in which he was paid was the same in all four counties. (Doc. No. 10-5, ¶ 3). Accordingly, at this stage, the Court is satisfied that the Florida C/D Techs were similarly situated, and BBI can reassert its argument to the contrary in a motion for summary judgment or a motion for decertification.

### 2.  Limiting the Class to Hillsborough, Pinellas, and Polk Counties

Alternatively, BBI argues that the class should be limited to the counties where Plaintiffs and the opt-in plaintiffs worked— Hillsborough, Pinellas, and Polk counties—because those are the only counties from which Plaintiffs have demonstrated that actual interest in joining this lawsuit by C/D Techs exists. Thus, BBI contends that C/D Techs that worked in Citrus, Hernando, Pasco, and Manatee counties should be excluded. Again, this Court rejects BBI's argument, because Plaintiffs have shown that Florida C/D Techs are similarly situated, and C/D Techs from these other counties may be interested in joining this lawsuit. Accordingly, the Court concludes that allowing the class to include all C/D Techs that performed work for BBI in

Florida is appropriate.

## F. Relevant Time Frame

The statute of limitations under the FLSA is two years, unless the violation is willful, in which case the limitations period is extended to three years. 29 U.S.C. § 255(a). BBI argues that Plaintiffs have improperly calculated the relevant time frame for the FLSA claims, because: (1) a two year period, as opposed to a three year period, should be used; and (2) the tolling agreement that was executed in the prior related case does not apply to this case to extend the limitations period. As explained below, the Court rejects BBI's first argument and agrees with BBI's second argument.

## 1. Appropriate Limitations Period

In their proposed Court-authorized notice, Plaintiffs have used a three-year limitations period. BBI argues that a three-year limitations period is not warranted, because Plaintiffs have not produced any evidence that BBI willfully violated the FLSA. As such, BBI argues that a two-year period should be used in the Court-authorized notice. The Court rejects this argument.

Plaintiffs have alleged in their amended complaint that BBI willfully violated the FLSA. At this early stage of the proceedings, the Court concludes that Plaintiffs' allegation is sufficient to support their request for a three-year period in the Court-authorized notice. See Ohsann v. L.V. Stabler Hospital, 2008 WL 2468559, at *3 (M.D. Ala. June 17, 2008); White v. Osmose, Inc., 204 F. Supp.2d 1309, 1318 n.9 (M.D. Ala. 2002). Thus, a C/D Tech may file a notice of consent to join this lawsuit in order to pursue a claim for an FLSA violation that occurred within three years prior to the filing of their consent to join. 29 U.S.C. § 256(b).

The Court wants to make clear, however, that it is not ruling that the alleged FLSA

violations were willful and/or that a three-year limitations period is warranted. Instead, the

Court is simply authorizing notice to class members that performed work for BBI within the last

three years (but prior to January 1, 2011). BBI may raise its argument regarding the appropriate

limitations period in a motion for decertification or a motion for summary judgment. See White,

204 F. Supp.2d at 1318 n.9.

## 2. Tolling Agreement

In their proposed Court-authorized notice, Plaintiffs have not only used a three-year

limitations period, but they have also added an additional 178 days due to a tolling agreement

that BBI entered into during the prior related case.[5] (Doc. No. 11, p. 9, n.1). Specifically, in the

prior related case, BBI entered into a tolling agreement that provided the following:

> No statute of limitations on any Wage Claims shall run against Claimants and the
> same shall be tolled during the period of time while this Agreement is in effect
> and neither party shall put forward or rely upon the period of time while this
> Agreement is in effect as a bar or laches or for any other purpose *to defeat the*
> *claims made or to be made in the Action*. In other words, while this Agreement is
> in effect, the time period between October 21, 2010 and the date of the
> termination of this Agreement[6] shall not be counted when calculating any
> limitations periods for Claimants' Wage Claims.

(Doc. No. 11-2, Ex. 1)(emphasis added). BBI argues that because the tolling agreement only

applied to claims that were made in the prior related case, the tolling agreement cannot be used

in this case to extend the limitations period. The Court agrees with BBI. Accordingly, the

limitations period used in the Court-authorized notice will not be extended by the tolling

---

[5]The related case was Thomas v. Broadband Interactive, Inc., 5:10-cv-518-MMH-JBT
("Thomas I"). After Thomas I was voluntarily dismissed in February of 2011, the Thomas I
plaintiffs filed another case, Thomas v. Broadband Interactive, Inc., 5:11-cv-204-MMH-JRK
("Thomas II").

[6]The tolling agreement terminated on April 17, 2011.

agreement.

### G.  Modifications to the Proposed Notice

BBI raises nine issues regarding Plaintiffs' proposed Court-authorized notice.  As explained below, the Court concludes that four of BBI's arguments are meritorious and that four of BBI's arguments require a reply from Plaintiffs before the Court rules.

### 1.  BBI's Arguments that Do No Require a Reply

First, BBI contends that the notice should reflect the proper time period for the alleged FLSA violations, which does not include any extra time pursuant to the tolling agreement entered into in the prior related case.  As previously stated, a C/D Tech may file a notice of consent to join this lawsuit in order to pursue a claim for an FLSA violation that occurred within three years prior to the filing of their consent to join.  29 U.S.C. § 256(b).  However, Plaintiffs do not contend in their amended complaint that BBI violated the FLSA after December 31, 2010 with respect to the collective class, so the relevant period for opt-in plaintiffs is between the three year period prior to filing their notice of consent to join this lawsuit and December 31, 2010 (i.e., approximately June 2009 through December 31, 2010).  See Gutescu, 2003 WL 25586749, at *17-18 (concluding that the notice should reflect a three-year period from the date that the notice was sent, not from the date that the complaint was filed).

Accordingly, in the "To:" section of the notice, it should reflect that the notice is being sent to Florida C/D Techs that performed work for BBI at any time during the period from June 2009 through December 31, 2010.  Likewise, the first sentence in the first paragraph of the "Your Legal Right to Join This Lawsuit" section should reflect that C/D Techs may join this lawsuit if they performed work for BBI at any time during the period from June 2009 through

14

December 31, 2010.

Second, BBI objects to the wording of the paragraphs in the "Introduction" section of the notice. The Court has considered BBI's objections, and the Court concludes that the "Introduction" section should be replaced with the following paragraphs:

> This Notice is to advise you of your legal right to join a collective action lawsuit against Broadband Interactive, Inc. ("BBI") for alleged unpaid minimum and/or overtime wages under the federal Fair Labor Standards Act ("FLSA"). This lawsuit was filed by Plaintiffs Allen Bobbitt and Robert Butler, individually and *on behalf of others similarly situated,* against BBI. It is pending in the United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:11-cv-2855-T-24 MAP.
>
> Plaintiffs are Collections/Disconnect Technicians who worked for BBI in Florida. On behalf of themselves and others similarly situated, Plaintiffs allege that BBI failed to pay them overtime wages for time worked over forty hours per week and/or minimum wages because it mis-classified them as independent contractors. They seek payment of all unpaid minimum and/or overtime wages, plus an equal amount as liquidated damages, interest, costs, and attorneys' fees.
>
> BBI has denied any wrongdoing or liability for unpaid minimum wages or overtime wages, liquidated damages, interest, costs and attorneys' fees, and BBI disputes Plaintiffs' claims. The Court has not yet determined if Plaintiffs or BBI will prevail in the case.

Third, BBI argues that the last sentence in the first paragraph in the "Your Legal Right to Join This Lawsuit" section (regarding the validity of contracts with BBI) should be deleted, as it is irrelevant to the issues in this lawsuit. The Court agrees that such sentence should be deleted.

Fourth, BBI argues that the consent to join form should not refer to BBI as the potential opt-in plaintiff's "current/former employer," because BBI disputes that an employment relationship existed between itself and the C/D Techs prior to January 1, 2011. The Court agrees that such reference in the consent to join form should be deleted.

Fifth, BBI argues that the title of the notice should be changed. The Court disagrees and

15

concludes that the current title on the notice is appropriate.

Finally, although not raised by BBI, the Court concludes that certain edits should be made to the section of the notice titled, "The Legal Effect of Filing or Not Filing the Consent Form." Specifically, the second paragraph of that section should be replaced with the following:

> If you timely file a completed Consent to Join form, you will be bound by the judgment of the Court on all FLSA issues in this case, regardless of whether Plaintiffs win or lose. You will also be bound by any Court-approved settlement that the Plaintiffs reach with BBI.

### 2.  BBI's Arguments that Require a Reply

BBI makes the following four additional arguments regarding the notice: (1) that a self-addressed, stamped envelope should not be provided, nor should consent to join forms be accepted via fax or email (Doc. No. 28, p. 14, ¶ 5); (2) that the notice should state that opt-in plaintiffs could be liable for paying costs in this case, pursuant to Rule 54 (Doc. No. 28, p. 14, ¶ 6); (3) that potential opt-in plaintiffs should not be directed to contact Plaintiffs' counsel with questions, or if questions to counsel are allowed, then defense counsel's contact information should also be listed (Doc. No. 28, p. 14, ¶ 7); and (4) that a 60-day opt-in period is too long (Doc. No. 28, p. 15).  Plaintiffs will be permitted to file a short reply to these objections prior to the Court ruling on them.

### III.  Production by BBI

Plaintiffs request that the Court order BBI to produce a computer-readable data file containing the names, last known addresses and telephone numbers, dates of employment, work locations, and social security numbers of all potential class members, so Plaintiffs can send them notice of this lawsuit.  Plaintiffs state that the social security numbers will be kept confidential and will only be used by Plaintiffs' counsel to trace notice mailings that are returned

undeliverable. However, Plaintiffs have not cited any case law that shows that the Court may require BBI to divulge the social security numbers of potential class members. As such, Plaintiffs must provide case law to the Court before the Court will require BBI to do so.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)    Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice (Doc. No. 11) is **GRANTED TO THE EXTENT THAT** the Court conditionally certifies the class as C/D Techs that performed work for BBI in Florida during the relevant three-year period (but prior to January 1, 2011).

(2)    The Court **DEFERS RULING** on several of BBI's objections to the content of the proposed Court-authorized notice. Plaintiffs are directed to file a reply that addresses BBI's objections, which are summarized on page 16 of this order. In addition, Plaintiffs' reply should contain case law that supports their argument that the Court should require BBI to divulge the social security numbers of potential class members. ***The reply may not exceed five pages and must be filed by 9:00 a.m. on May 29, 2012.***

(3)    Plaintiffs are directed to email a courtesy copy of the proposed Court-authorized notice that reflects the Court's edits described in this Order to Judge Bucklew's chambers' email address, which is listed on CM/ECF.

(4)    The parties' requests for oral argument are denied.

**DONE AND ORDERED** at Tampa, Florida, this 23rd day of May, 2012.

Susan C. Bucklew

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record